Filed 12/6/24  P. v. Singh CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SIMRAN SINGH,<br><br>    Defendant and Appellant. | C100613<br><br>(Super. Ct. No. MAN-CR-FE-2020-0005721) |

A jury found defendant Simran Singh guilty of contact with a minor to commit a sexual offense and meeting a minor for lewd purposes.  He was sentenced to two years of formal probation and 180 days in county jail.  On appeal, he contends that he received constitutionally ineffective assistance of counsel when his lawyer called a witness to corroborate Singh's exculpatory testimony without having reviewed damaging text messages that the prosecution used to severely impeach the witness's credibility and her account of events.  Finding no prejudice from counsel's omission, we affirm.

## BACKGROUND

### I.

In June 2020, sheriff's deputy Christopher Sterni was assigned to a special operation that placed advertisements on Craigslist posing as young girls. Sterni posted an advertisement with a phone number in Missed Connections, a section on the Craigslist website where people look for sexual relationships. The advertisement, titled "Small town girl, Lathrop," stated, "Hey guys, free during the daytime to hang with. Wanting a good time. Hit me up."

On June 17, 2020, Singh texted, "Hi," to the number in the advertisement followed by a text message stating, "I'm free to hang today. Got my own place, ride, and $." On June 18, 2020, Sterni responded: "Nice, I don't drive, sorry. My parents had my phone yesterday, just got it back." After Sterni and Singh texted each other that they were free that day, Sterni wrote, "tell me a little bit about you." Singh responded: "I'm [36] from Manteca, height 5-10." Sterni responded: "That's good. I'm younger, hope it won't bother you." Singh texted: "Are you at least 21?" Sterni responded: "No." Singh sent another text: "18? LOL [laugh out loud]." Sterni responded: "But I'm not . . . here looking for a relationship." Singh sent back a text: "Me neither, I just got out of a relationship."

Singh asked for a name and photo. Sterni texted, "My friends call me Mindy. If . . . I send it, will you send me one?" Sterni sent a photo of a sheriff's office employee over the age of 21, taken with filters to make her look younger. When Singh received the photo, he texted, "Ah, you're so cute . . . and pretty," and sent "Mindy" his picture. After receiving the photo, Sterni texted: "You're handsome. I hope me being almost 14 doesn't bother you." Singh sent a text stating, "I'm very open minded and nonjudgmental," followed by another saying, "But you're too young." He then texted: "What are you looking for?" Sterni responded: "No relationship, just FWB," an acronym for "friends with benefits." Singh texted: "Okay, we can def be friends. Let me

2

know if you wanna see me today."  Sterni responded:  "I do want to see you, but I want that benefit part.  You game?"  Singh texted:  "Yeah, I'm game.  Laugh out loud."  He followed this text with, "What else do you like to do and looking for?"  Sterni responded: "I'm looking to get played with and it goes from there."

Singh asked if she wanted to come over, and Sterni suggested that they meet at a park and then go to her house.  Singh responded, "Okay.  We can do whatever you want." Sterni texted:  "You have condoms?"  Sterni followed this text with the following message:  "Like to suck your dick after you lick my pussy."  Singh responded to the first text:  "I don't, but I can get some."  He then responded to the second text:  "Yeah, I wanna eat you first."  When he got in his car to drive to the park, Sterni texted:  "You got protection?"  Singh responded:  "Not yet, LOL," and then, "Can we do that together?"

When he arrived at the park, Singh was arrested, and his phone was seized.

II.

The People charged Singh with contacting a minor with the intent to commit a sexual offense (Pen. Code, § 288.3, subd. (a); count one) and arranging and appearing at a meeting with a minor or a person believed to be a minor to commit a lewd or lascivious act (§ 288.4, subd. (b); count two).[1]

At trial, the prosecution called one witness, Sterni, to testify to the events of June 17 and June 18, 2020.  Singh testified in his defense.  He stated that on June 17, 2020, he was looking for apartments on Craigslist when Missed Connections caught his eye.  He had recently broken up with his girlfriend, so he decided to message people. When he received the photo Sterni sent, Singh thought she looked 25 years old.  He thought he was talking to an adult.  When he received texts that said she was not yet 14 years old, he wondered why this person was "goofing around."  So, he started joking

---

[1] Undesignated statutory references are to the Penal Code.

around too.  With regard to the texts about oral sex, he thought the person was not being real and he was just replying to text messages he was getting.  He did not think he was communicating with a 13 year old, because someone that age does not speak in that way about sex to a 36-year-old man.  He decided he wanted to see the person who was pretending to be 13 years old face-to-face.

Singh further testified that when he received a message that the girl was on the way to the park, he was in communication with Dr. Melissa February via Skype.  Singh described Dr. February as his mentor and former colleague.  He went to medical school with Dr. February; she finished three to four years before him.  He asked Dr. February what to do if the person turned out to be a minor.  Dr. February told him to call Child Protective Services.  Singh did not bring a condom to the meeting in the park, because he never intended to have sex with a stranger, even an adult.

To corroborate Singh's testimony, the defense called Dr. February as a witness.  On direct examination, Dr. February testified that Singh had been studying for a board exam and would call her from time to time about how to answer certain questions.  On June 18, 2020, he called Dr. February on Skype and said there was a woman or child who needed help and he was not sure if the person was a minor.  Dr. February testified that she told him that if the person was a child, he should call Child Protective Services.

On cross-examination, Dr. February testified that she and Singh were close friends in medical school from 2004 to 2005, but since then they were just colleagues with nothing beyond a platonic friendship.  Dr. February said that she would not lie to help Singh.  The prosecutor then questioned Dr. February about affectionate and sexually explicit texts that she had sent Singh in 2019 and 2020.  Dr. February confirmed that she had told Singh she loved him and offered to buy him expensive gifts.  Dr. February admitted that she had testified she was not in a relationship with Singh and agreed that she wanted to change that testimony.  Dr. February testified that she had been in a

4

relationship with Singh, but in 2019 they were not together. Dr. February stated that she liked Singh, but he did not like her.

Dr. February confirmed sending numerous sexually explicit texts to Singh, including some about two months before his arrest. Dr. February admitted that on June 18, 2020, she was texting Singh, but he was not responding. She further confirmed that, between June 17, 2020, and June 19, 2020, she was texting him, but again he was not responding. Singh was "ghosting" her. Dr. February admitted it was possible that she did not speak to Singh on June 18, 2020. Dr. February acknowledged that she had sworn to testify truthfully but had not done so.

On redirect examination, Dr. February maintained that she did have a Skype call with Singh on June 18, 2020.

The day after Dr. February testified, defense counsel informed the trial court that the District Attorney's Office had previously given him a "data dump" from Singh's cell phone and information about how to un-encrypt it and place the raw data on his computer system. Defense counsel maintained that he had reviewed the data and that the reports of text messages that the prosecution had used to impeach Dr. February were not there. Counsel said that he had learned from the prosecutor that additional software was needed to create the reports.

The prosecutor informed the trial court that the data from Singh's cell phone had been provided to defense counsel in February 2022, more than one year before the trial, and that her staff had shown defense counsel's staff how to extract the files from the data. She added that "[n]o further questioning was done by [defense counsel's] office on what to do with that raw data." Although defense counsel had everything that was in the reports and the reports were the prosecution's work product, the prosecutor provided defense counsel with a copy of the reports. Defense counsel asked for an additional day to review the text messages.

5

The next day, the defense called a private investigator, who testified that he found 53 messages between Singh and Dr. February between June 15 and June 18, 2020, most of them sent by Dr. February but some by Singh. On June 18, 2020, there were six text messages sent by Dr. February to Singh, but no responses from him.

The defense then re-called Dr. February, who testified again that she had communicated with Singh by Skype on June 18, 2020, about a minor. Dr. February stated that she had testified on cross-examination that Singh was not talking to her on June 17, 2020, which was not true, because she was embarrassed and wanted to stop the cross-examination. After reviewing text messages with Singh sent between June 16 and June 18, 2020, Dr. February testified that she was not being "ghosted" by him. Dr. February repeated that she received a phone call from him on June 18, 2020.

The jury found Singh guilty of both counts. With respect to count one, the jury found that he contacted a minor with intent to commit oral copulation involving a minor under the age of 14.

Singh subsequently filed a substitution of counsel. His new counsel filed a motion for a new trial on a number of grounds, including ineffective assistance of counsel.

The trial court denied the motion for a new trial. With respect to Singh's ineffective assistance of counsel claim, the court found that Singh's trial attorney had performed deficiently by failing to review the text messages between Singh and Dr. February. The court reasoned that, had counsel "reviewed those text messages, it was unlikely he would have called Dr. February as a witness."

The trial court further concluded that Singh was not prejudiced by counsel's omission. The court explained: "[W]hen you look at prejudice, you have to look at what actually came into this trial. We have text messages, text messages that are in printed form that can't be changed that the jury got to see . . . . In those text messages, it was made very clear that she was under 18. In fact, she was under 14. And when the defendant asked her what she was looking for, she said friends with benefits, and that was

6

after he was told her age.  He agrees to get a condom, agrees to meet with her.  And after she says, 'I would like to suck your dick after you lick my pussy,' he responds that he wants to eat her first. . . .  This is somebody who is arranging a meeting with someone who he knows to be underage."

The trial court sentenced Singh to two years of formal probation and 180 days in jail.  The court also ordered him to register as a sex offender for life.

Singh filed a timely notice of appeal.

DISCUSSION

Singh contends that he received ineffective assistance of counsel when defense counsel called Dr. February as a witness without reviewing the text messages the prosecutor used to impeach her.  He argues that there was a reasonable probability of a hung jury or acquittal if defense counsel had reviewed the text messages and not called Dr. February as a witness.

"An ineffective assistance of counsel claim has two elements:  a defendant must show that their counsel's performance was deficient, *and* that this deficient performance prejudiced the defense.  [Citation.]  A reviewing court can begin an ineffective assistance of counsel inquiry with either element and need not address both elements if one is not satisfied.  [Citations.]  Indeed, it is often preferable for a court to dismiss an ineffective assistance of counsel claim solely for lack of prejudice.  [Citations.]  To satisfy [the] prejudice prong, a defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "  (*In re Tellez* (2024) 17 Cal.5th 77, 88; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687, 694, 697.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland v. Washington*, *supra*, at p. 694.)  "Whether counsel's performance was deficient, and whether any deficiency prejudiced defendant, are mixed questions of law and fact subject to our independent review."  (*In re Gay* (2020) 8 Cal.5th 1059, 1073.)

7

In this case, Singh has not shown a reasonable probability that, but for Dr. February's testimony, the result of the trial would have been different. The text messages between Sterni posing as "Mindy" and Singh showed that she told him at the outset that she was not 18 years old and was "almost 14." After learning her age, he continued to communicate with her, asking, "What are you looking for?" When she replied that she was looking for "FWB [friends with benefits]," i.e., a sexual relationship, Singh asked if she wanted to see him that day. When she emphasized that she wanted the "benefit part" and asked if he was "game," he replied, "I'm game." When he asked what she liked to do, she responded that "I'm looking to get played with and it goes from there," which led him to set up the meeting in the park. She asked if he had condoms, and he responded that they could get some together. And when "Mindy" texted a sexually explicit message, "Like to suck your dick after you lick my pussy," Singh responded, "Yeah, I wanna eat you first." This is overwhelming evidence of the crimes for which he was convicted.

Without Dr. February's testimony, Singh's defense would have rested on his own uncorroborated testimony that he believed he was text messaging with an adult. That testimony was directly contradicted by the text messages themselves, in which "Mindy" told him that she was almost 14 years old and Singh himself responded that she was "too young" and that he was "very open minded and nonjudgmental." His testimony suggesting that he arranged a meeting only to investigate the person he was communicating with and that he never intended to commit oral copulation involving a minor was also implausible. When asked about his text, "Yeah, I wanna eat you first," his only response was, "I was just replying to the text messages I was getting." Had defense counsel reviewed the text messages between Singh and Dr. February and declined to call Dr. February as a witness, there is no reasonable probability that the outcome in this case would be any different.

8

DISPOSITION

The judgment is affirmed.

/s/
FEINBERG, J.

We concur:

/s/
HULL, Acting P. J.

/s/
MAURO, J.